## THE STATE v. HUGHES.

1. The act of 1811, which requires the name of the prosecutor to be indorsed " on all bills of indictment," is merely directory, and the omission to make such an indorsement, will not affect the validity of the indictment.

2. An amendment in criminal proceedings, which is immaterial, and does not vary the legal effect of the record, cannot be regarded as an available objection to a conviction.

3. A judgment which recites that the jury were elected, tried, and sworn to try the prisoner, &c., who was indicted for the crime of murder, and states that the prisoner was thereupon arraigned and pleaded " not guilty," to the indictment, is erroneous. The plea of the prisoner should have preceded, the selection and swearing of the jury.

4. It is not permissible for a party who expects an indictment will be preferred against him, to inquire before they are sworn, of each of the members of the grand jury who are to consider the same, whether any of them " have formed and expressed an opinion, as to the guilt or innocence of the accused." If the law were otherwise, the pannel might be so far exhausted by the challenges of different persons, as to render it impossible to proceed with the criminal business of the term.

5. It is competent for a party about to be indicted to challenge a grand juror after the pannel have been sworn, but such challenge will (if allowed,) only operate an exclusion of the juror in the particular case to which it relates. But the challenge of a grand juror cannot impose on him the necessity of making a disclosure of the matters to which his oath refers.

THE prisoner being indicted in the circuit court of Dallas, for the murder of Richard Hillburn, was tried on the plea of " not guilty," and convicted by the verdict of a jury. Thereupon he moved in arrest of judgment, and assigned the following causes: " 1st. That the indictment has the name of no prosecutor indorsed upon it. 2d. That the record does not show that the grand jury were selected as required by law. 3d. That after the conviction of the prisoner, the court permitted the record to be amended in this—In the entry of the verdict of guilty, these words were inserted: ' in the absence of the solicitor of this circuit.' So as

to make the entry read, 'This day came John W. Lapsley, Esq. solicitor *pro tem.*, appointed by the court for the present term, in the absence of the solicitor of this circuit, &c. 4th. That after the indictment was found, the petit jury who tried the prisoner, were elected, tried and sworn, to try this case before the prisoner was arraigned and pleaded to the indictment. 5th. That before the grand jury, who found the bill of indictment were sworn, the counsel suggested to the court that the prisoner was confined in the jail of said county upon the said charge, and it was likely his case would come before the grand jury of the term, and he moved the court for leave in his behalf, to purge the grand jury about to be sworn, viz: that each member of the grand jury be asked whether he had formed and expressed an opinion, as to the guilt or innocence of the accused; which motion was overruled and entered on the minutes of the court.' " The reasons in arrest of judgment were overruled, and sentence of death pronounced against the prisoner; but the court being of opinion that the motion presented questions of law both novel and difficult, referred the same to this court for decision.

Attorney General, for the State.

G. W. GAYLE, contra.

COLLIER, C. J.—1. and 2. The counsel for the prisoner declined arguing the first and second reasons, moved in arrest of judgment, but as they have been referred to this court as questions of novelty and difficulty, it is proper that they should be answered. The act of 1811, which enacts that "it shall be the duty of the attorney general, to mark on all bills of indictment the name of the prosecutor," has been long regarded as merely directory to the attorney general; and the omission does not at all affect the validity of the indictment.

The second reason not being sustained by the record, it could only be available, if at all, by a plea in abatement. State v. Greenwood, 5 Porter's Rep. 474.

3. It is needless to inquire into the power of the courts to per-

The State v. Hughes.

mit amendments in criminal proceedings, since it is clear, that the amendment here complained of, was entirely immaterial, its omission or insertion being alike unimportant to the regularity of the judgment entry. The judgment was complete without the amendment—the terms used directly implied what the addition expressly asserted.

4. The judgment discovers that the prisoner being brought to the bar, admitted that he had been served with a copy of the indictment, and a list of the jury who were to try him two entire days previously, " and thereupon came a jury, to wit: ——— &c. (setting out their names at length) who being elected, tried, and sworn, well and truly to try, and true deliverance to make between the State of Alabama and the prisoner at the bar, whom they should have in charge, and a true verdict give, according to law and evidence; and thereupon the said prisoner was arraigned upon the bill of indictment, and pleaded thereto, not guilty, and the jury aforesaid having heard the evidence on their oath, do say, &c." We must understand the record to speak what is strictly true in this particular, inasmuch as it was competent, and the court no doubt would have amended it, if incorrect, according to the truth of the case. The facts then are these, the prisoner is brought to the bar of the court, and without being required to plead to the indictment, a jury is elected and sworn to pass upon his guilt or innocence; after this, for the first time, he is called on for a plea.

This proceeding cannot be sustained without a wide departure from established usage. Though a formal arraignment of one charged with a criminal offence, may not be indispensable to the regularity of a conviction, we think it clear that the case must be put in a condition for trial, before the jury is sworn. Such is the settled course of procedure according to the most accurate writers upon criminal law. (4 Bla. Com. 322, 332, 342.) The idea of selecting and swearing a jury to try a case which in its progressive steps, has not reached the stage when it is triable, is a perfect anomaly.

83

The State v. Hughes.

The oath administered to the jury, related to the present time, and cannot authorize them to try a case which is afterwards placed in a condition for trial: until the prisoner was called on for his plea, it could not be known whether there would be an issue of fact for the jury, or what the issue, (if any) might be. The prisoner instead of submitting the question of his guilt, might have pleaded in abatement, or have presented to the court legal objections to the indictment. It is then obviously proper that the established *formula* should be observed.

The forty-eighth section of the act of 1807, "for the punishment of crimes and misdemeanors," (Aikin's Digest, 119,) bears directly upon this question, it enacts, "if any person on his or her arraignment, for any capital or inferior offence, shall stand mute, or will not answer to the indictment, the plea of not guilty shall be entered for him or her on the record, and the court shall in either of the said cases, proceed to trial of the person standing mute, as if he or she had pleaded not guilty, and for trial put him or herself upon the country, &c." This statute clearly contemplates that no one shall be put upon trial for a criminal offence, until after a plea is interposed, or an opportunity has afforded and the accused declined to plead, in which latter case, the plea of not guilty is to be entered on the record. This brings us to the conclusion that the circuit court should have arrested its judgment for the fourth reason assigned.

5. Without attempting to consider at length, under what circumstances and for what causes challenges to grand jurors are allowable, we think the circuit court rightfully refused to permit them to be asked before they were sworn, *whether they had formed and expressed an opinion as to the guilt or innocence of the prisoner*. Our grand juries are empannelled for the entire term, to inquire of all offences committed within the body of the county, and there can be but one grand jury to the same term. Now if objections to individual jurors were allowed before they were sworn on the pannel, which went to disqualify them in particular cases, it would be difficult *generally* and *often* impracticable to select an unexceptionable grand jury.

The State v. Hughes.

One man would object to one, another to a second, and so continue it, until those attending on the *venire* were reduced below the number required by law to constitute a grand jury.   But if challenges for causes not operating a universal disqualification, should be postponed until after the jury is elected and sworn, no inconvenience will be experienced.   Then a juror may be excluded in the particular case in which he is objectionable, and deliberate and act with the grand jury in the performance of the other duties devolving upon them.   But no challenge to a grand juror can impose on him the necessity of making a disclosure of the matters to which his oath refers.   We make this remark because there may be reason to apprehend that challenges are not always intended to subserve the ends of justice.

The judgment for the fourth reason assigned, should have been arrested, and is here reversed.   And the prisoner is directed to be held in custody to await a trial *de novo*, unless in the *interim* he should be discharged by due course of law.