# CRAIN *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 557.   Submitted March 3, 1896. — Decided April 20, 1896.

One count in an indictment may refer to matter in a previous count so as
to avoid unnecessary repetition; and if the previous count be defective
or is rejected, that circumstance will not vitiate the remaining counts,
if the reference be sufficiently full to incorporate the matter going be-
fore with that in the count in which the reference is made.

A count in an indictment which charges that the defendant did certain
specified things, and each of them, the doing of which and of each of
which was prohibited by statute, and also that he caused the doing of
such things and of each of them, is not defective so as to require that
judgment upon it be arrested ; and there may be a verdict of guilty upon
proof that the accused had done any one of the things constituting a
substantive crime under the statute.

A record which sets forth an indictment against a person for the commis-
sion of an infamous crime; the appearance of the prosecuting attorney ;
the appearance of the accused in person and by his attorney; an order
by the court that a jury come " to try the issue joined ; " the selection of
a named jury for the trial of the cause, who were " sworn to try the issue
joined and a true verdict render ; " the trial; the retirement of the jury ;
their verdict finding the prisoner guilty; and the judgment entered
thereon in accordance therewith; does not show that the accused was
ever formally arraigned, or that he pleaded to the indictment, and the
conviction must be set aside; as it is better that a prisoner should escape
altogether than that a judgment of conviction of an infamous crime
should be sustained, where the record does not clearly show that there
was a valid trial.

THIS writ of error brought up for review a judgment in the
District Court of the United States for the Western District
of Arkansas, by which the plaintiff in error was sentenced to
imprisonment in the House of Correction at Detroit, Michigan,
at hard labor, for the term of three years.

The defendant was indicted under section 5421 of the Re-
vised Statutes, which provides: "Every person who falsely
makes, alters, forges or counterfeits ; or causes or procures to
be falsely made, altered, forged or counterfeited ; or willingly

aids or assists in the false making, altering, forging or counter-
feiting, any deed, power of attorney, order, certificate, receipt
or other writing, for the purpose of obtaining or receiving, or
of enabling any other person, either directly or indirectly, to
obtain or receive from the United States, or any of their offi-
cers or agents, any sum of money; or who utters or publishes
as true, or causes to be uttered or published as true, any such
false, forged, altered or counterfeited deed, power of attorney,
order, certificate, receipt or other writing, with intent to de-
fraud the United States, knowing the same to be false, altered,
forged or counterfeited; or who transmits to, or presents at,
or causes or procures to be transmitted to, or presented at, any
office or officer of the government of the United States, any
deed, power of attorney, order, certificate, receipt or other
writing, in support of, or in relation to, any account or claim,
with intent to defraud the United States, knowing the same
to be false, altered, forged or counterfeited, shall be impris-
oned at hard labor for a period of not less than one year nor
more than ten years; or shall be imprisoned not more than
five years and fined not more than one thousand dollars."

The indictment contained three counts. The first count set
out in full a declaration purporting to have been made by one
Spahiga, a resident of the Creek Nation, in the Indian Terri-
tory, for an invalid pension, to which was appended a cer-
tificate or statement purporting to have been made by two
persons named Marrel and Fixico, to the effect that they were
present and saw Spahiga sign his name or make his mark to
said declaration, and that they had every reason to believe
that he was the identical person that he represented himself
to be. The declaration and accompanying certificate or
statement purported to have been sworn to on the 4th day of
August, 1892, before " A. W. Crain, U. S. Comm'r, Pension
Notary."

The second count charged: " That herefore, to wit, on the
4th day of August, A.D. 1892, one Spahiga is alleged to have
executed a certain declaration and affidavit; said declaration
and affidavit are in words and figures as set out in the first
count of this indictment, and said declaration and affidavit

purporting to be executed before one A. W. Crain, United States commissioner in the Creek Nation, in the Indian Territory, the said Spahiga claiming in said declaration a pension from the United States as soldier of war of rebellion, who in said declaration was alleged to have enlisted under the name of Spahiga, at ——, on the 12th day of August, 1863, Company D, First Regiment, Indian Home Guards, Indian Territory; in the war of the rebellion; said declaration and affidavit, after being so made, executed and falsely counterfeited and forged by said Alex. W. Crain, was by said Alex. W. Crain forwarded, with intent to defraud the United States and to obtain certain moneys from the United States, to the office of the Commissioner of Pensions, in the Department of the Interior, at the city of Washington, in the District of Columbia, where the same was duly filed on the 12th day of August, 1892, as a claim against the Government of the United States for a pension by the said Spahiga, as soldier aforesaid, as aforesaid, and being so filed for approval by the said A. W. Crain, in the office aforesaid, by the Commissioner of Pensions, and the said affidavit and declaration being material on the question pending before said Commissioner of Pensions as to whether the said Spahiga was by the laws of the United States entitled to a pension. And the jurors aforesaid upon their oaths aforesaid do further present that on the 4th day of August, 1892, at the Creek Nation, Indian Territory, and within the Western District of Arkansas, at which date said declaration, affidavit and claims were prepared and made for filing in the office of the Commissioner of Pensions, as aforesaid, the same being an office of the United States, for the purpose aforesaid, one Alex. W. Crain did make, execute and forge, and cause to be made, executed and forged, a certain pretended and false affidavit, or the same may be called a certificate, the same being one and the same paper, and being in form and substance as hereinafter set out, which said forged, false and counterfeited affidavit or certificate was fraudulent, and was a part of the said declaration and affidavit above mentioned, and was forwarded, together with the said declaration, to the office of the Commissioner of Pensions aforesaid

for the purpose of defrauding the United States and of aiding and abetting the said Spahiga to obtain the approval of the said Commissioner of Pensions to his said claim for a pension as aforesaid, for the purpose of aiding the said Spahiga fraudulently to obtain money from the United States; which said pretended and false affidavit and certificate is in substance set out in the first count of this indictment. The said pretended affidavit and certificate and declaration were forged, false and fraudulent, and did contain fraudulent and fictitious statements, as the said A. W. Crain well knew, in this: That Pahose Marrell, Spahiga and Nokos Fixico did not sign said pretended affidavit and certificate, declaration and affidavit, as set forth in said false certificate and affidavit, and said Pahose Marrell, Spahiga and said Nokos Fixico were not sworn as to the truth of the matters and things set forth in said pretended declaration, affidavit and certificate, but in truth and fact the said A. W. Crain did knowingly and wilfully, feloniously and falsely make, counterfeit, forge and cause to be made, counterfeited and forged the names of Pahose Marrell, Spahiga and Nokos Fixico to and upon the said false and forged affidavit and certificate with intent to defraud the United States and to aid the said Spahiga in obtaining money fraudulently from the United States, and that the said A. W. Crain did not swear the said Pahose Marrell, said Spahiga, and the said Nokos Fixico as to the truth of the matters and things set forth in said declaration, affidavit and certificate, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The third count charged " that A. W. Crain, on the 4th day of August, A.D. 1892, at the Creek Nation, in the Indian country, within the Western District of Arkansas aforesaid, unlawfully and feloniously did transmit to the office of the Commissioner of Pensions of the United States, the same being an office under the government of the United States, and for the purpose of defrauding the United States, the false and forged instrument of writing set out in the first count of this indictment, contrary," etc.

The record of the trial in the trial court, omitting captions, was as follows:

"FRIDAY, *November* 7, 1890.

"On this day come the United States of America, by Jas. F. Read, Esq., attorney for the western district of Arkansas, and come, the said defendant, in his own proper person and by his attorney, Wm. M. Mellette, Esq., and on motion of plaintiff, by its attorney, it is ordered by the court that a jury come to try the issue joined ; whereupon the following were selected for the trial of this cause, to wit, [naming them] twelve good and lawful men of the district aforesaid, duly selected, empanelled, and sworn to try the issue joined and a true verdict render according to the law and the evidence, and, after hearing the evidence and argument of counsel and receiving the charge of the court, retired to consider of their verdict, and after a short time returned into court the following verdict, to wit:

"We, the jury, find the defendant, A. W. Crain, guilty as charged in the first, second, and third counts of the within indictment.

(Signed)     "J. L. McCONNELL, *Foreman*."

"Whereupon, by order of the court, the jury was discharged from the further consideration of the case and the said defendant committed to the custody of the marshal to await final sentence.

"MONDAY, *Nov.* 12, 1894.

"On this day comes the said defendant, by his attorney, and files his motion for arrest of judgment herein."

That motion was as follows:

"Now comes the defendant and moves the court to arrest the judgments on the verdict of the jury rendered on the three counts herein for the following reasons, and to set aside said verdicts :

"1st. Because the first count of the indictment upon which said verdict was rendered is defective in substance, in this, that it does not state in what particular the affidavit, declaration or certificate set forth therein is forged, and traverses the same.

"2d. Because said indictment does not state which declaration, certificate or affidavit therein set forth is false, there being two such documents.

"3d. Because the first count of said indictment does not allege that defendant knew that the document set forth therein was false.

"4th. Because said first count charges no act which is a crime or misdemeanor under the laws of the United States.

"5th. Because the second count in said indictment is double, containing and including three distinct offences therein, to wit: That the defendant forwarded to the Pension Department of the United States two separate and distinct affidavits or declarations or certificates for the purpose of defrauding the United States, and that the defendant did falsely make, counterfeit and forge and cause to be made, counterfeited and forged a certain pretended and false affidavit or certificate for the purpose of defrauding the United States and obtaining money from the United States.

"6th. Because the second count of said indictment does not set out with sufficient certainty the affidavit, certificate or declaration alleged therein to have been falsely made, forged and counterfeited and unlawfully forwarded to the office of the Commissioner of Pensions.

"7th. Because the said count is not complete within itself, but in an indefinite and uncertain manner refers to a document contained and set forth in the first count of said indictment.

"8th. Because the second count of said indictment is indefinite and misleading, in this, that it alleges that the names of Pahose Mahlah, Spahiga and Nocus Fixico were forged to one and the same document, as set out in the first count of the indictment, which is not a fact.

"9th. Because said second count does not state in what particular the affidavit or declaration or certificate set out therein is false and was forged.

"10th. Because the said second count does not in a legal manner charge any offence against the laws of the United States.

" 11th. Because the third count of said indictment is defective in substance, in this, that it does not state in what particular the affidavit or instrument of writing therein referred to as being set out in the first count of said indictment is false and forged.

" 12th. Because the reference made in said third count to an instrument of writing set forth in the first count is indefinite and uncertain.

" 13th. Because said third count does not state which instrument of writing set forth in the first count was unlawfully forwarded to the Pension Office.

" 14th. Because the third count of said indictment does not state that the defendant knew that the instrument of writing alleged to have been unlawfully forwarded to the Pension Office was false and forged.

" 15th. Because said third count charges no act which is a crime under the laws of the United States.

" Wherefore defendant prays that he be discharged."

On the 28th of December following the court sustained the motion for arrest of judgment as to the first and third counts, and overruled it as to the second count. The record then proceeds :

" On motion of Jas. F. Read, Esq., attorney for the western district of Arkansas, the said defendant, A. W. Crain, was brought to the bar of the court in custody of the marshal of said district, and, it being demanded of him what he has or can say why the sentence of the law upon the verdict of guilty (second count) heretofore returned against him by the jury in this cause on the 9th day of Nov., A.D. 1894, shall not now be pronounced against him, he says he has nothing further or other to say than he has heretofore said."

The court then sentenced the prisoner to imprisonment at hard labor for three years. On the 22d day of January, 1895, the following entries appear in the record.

" Now comes defendant, Alex. W. Crain, by his attorney, Wm. M. Mellette, Esq., and tenders this his bill of exceptions in the above entitled cause and asks that the same be signed and made a part of the record in this case, which is accordingly done.

" Also at the same time presents his assignment of errors, which is ordered filed.

" Also at the same time presents his petition asking for writ of error to the Supreme Court of the United States, which petition is ordered filed and writ of error ordered issued."

The exception was to the overruling the motion in arrest of judgment as to the second count of the indictment.

The assignments of error were : (1) That it was error to overrule the motion in arrest of judgment upon the conviction upon the second count of the indictment ; (2) That it was error to render judgment against the defendant upon the verdict of guilty on that count, and to sentence him to imprisonment thereon.

In the brief for the plaintiff in error in this court it was said : " The plaintiff in error was not given an opportunity to plead to the indictment before being put upon his trial, never having been arraigned, as is fully shown by an inspection of the printed record. An arraignment is essential to a valid trial."

*Mr. A. H. Garland* and *Mr. R. C. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

Mr. Justice HARLAN delivered the opinion of the court.

The transcript before the court must be taken to be as certified, namely, a true and complete copy of the record and proceedings in this case. It appears from the first order of record in the trial court that the defendant came " in his own person, and by his attorney ; " that, on motion of the United States, by its attorney, it was " ordered by the court that a jury come to try the issue joined ; " that a jury was selected, empanelled and sworn " to try the issue joined, and a true verdict render according to the law and the evidence ; " and that the jury found the defendant " guilty as

charged in the first, second and third counts of the within indictment."

The defendant moved, upon written grounds filed, to arrest the judgment, and to set aside the verdict. The grounds of that motion all related to the sufficiency of the several counts of the indictment. The motion was overruled as to the second count, and sustained as to the first and third.

The defendant, on a subsequent day, tendered his bill of exceptions, embodying the motion in arrest of judgment, with the grounds therefor, and at the same time presented an assignment of errors.

The errors assigned by him in the court below, and made part of the record, were: 1. The overruling of the motion in arrest of judgment upon the conviction on the second count of the indictment. 2. The rendering of judgment upon the verdict of guilty on that count, and the sentence of imprisonment.

When the accused was brought into court, after verdict, it was demanded of him what he had or could say why the sentence of the law upon the verdict of guilty on the second count should not be pronounced against him. He replied that he had nothing further to say than he had theretofore said.

1. One of the objections made to the second count was that it was incomplete, and referred in an uncertain, indefinite manner to documents set forth in the first count. The reference to the declaration and affidavit set forth in the first count indicated the documents that were intended to be incorporated, by reference, into the second count; and this reference was not affected by the fact that the first count was defective, or by the fact that judgment upon that count was arrested. One count may refer to matter in a previous count so as to avoid unnecessary repetition; and if the previous count be defective or is rejected, that circumstance will not vitiate the remaining counts, if the reference be sufficiently full to incorporate the matter going before with that in the count in which the reference is made. *Blitz* v. *United States*, 153 U. S. 308, 317.

2. It is said that the second count charges three separate, distinct felonies, and is, therefore, materially defective within the rule that two offences cannot be charged in the same count. 1 Archbold's Cr. Pr. & Pl. 95; 1 Bishop's Cr. Pro. § 432. Undoubtedly the section of the Revised Statutes, under which the indictment was framed, embraces several distinct acts, the doing of either of which is punishable. It is prohibited either to falsely make, alter, forge or counterfeit, or to cause to be falsely made, altered, forged or counterfeited, any deed, power of attorney, order, certificate, receipt or other writing for the purpose of obtaining, recovering or enabling any other person, either directly or indirectly, to obtain or receive, from the United States any sum of money. It is also prohibited to any person to transmit, or present at, or cause or procure to be transmitted to or presented at, any office or to any officer of the government, any deed, power of attorney, order, certificate, receipt or other writing, in support of or in relation to, any account or claim with the intent to defraud the United States, knowing the same to be false, altered, forged or counterfeited. The second count charged, in substance, not only that the defendant did things and each of them, the doing of which or either of which the statute prohibited, but also that he caused the doing of such things and of each of them. Was the count, thus drawn, so defective as to require that judgment upon it be arrested?

In *Rex* v. *Hunt*, 2 Camp. 583, the question was whether a defendant might be found guilty upon a count in an information, charging him with having composed, printed and published a libel, if it were proved that he simply published but did not compose it. Lord Ellenborough held that it was enough to prove publication. "If an indictment," he said, "charges that the defendant did and caused to be done a particular act, it is enough to prove either. The distinction runs through the whole criminal law, and it is invariably enough to prove so much of the indictment as shows that the defendant has committed a substantive crime therein specified." Chitty says: "If an indictment charge that the defendant did, and caused to be done, a particular act, it is enough to prove

either. Thus, under an indictment for forgery, stating that the defendant forged, and caused to be forged, it suffices to prove either." 1 Chitty's Cr. Law, 251; Starkie's Cr. Pl. 339.

In *Rasnick* v. *Commonwealth*, 2 Virginia Cases, 356, it was held that an indictment charging the defendant with the making of certain base coin, of causing and procuring such coin to be made, and of assisting in making it — three distinct offences set out in one count — was sufficient to authorize judgment upon a general verdict of guilty.

So, in *Commonwealth* v. *Tuck*, 20 Pick. 356, it was adjudged that a count in an indictment, alleging that the defendant broke and entered a shop with intent to commit larceny, and did there commit larceny, was not double. In that case, doubt was expressed whether the objection that an indictment, containing one count, and embracing more than one offence, could be taken advantage of in arrest or on error — the court observing that the better opinion was that it cannot, and that the appropriate remedy of the accused, in order to avoid the inconvenience and danger of having to meet several charges at the same time, is a motion to quash the indictment or to confine the prosecutor to some one of the charges. In another case, arising under a statute of Massachusetts making it an offence to set up *or* promote certain exhibitions, without license therefor, an indictment, containing a single count, and charging that the defendant set up *and* promoted a certain exhibition, was sustained against the objection of duplicity. *Commonwealth* v. *Twitchell*, 4 Cush. 74.

Under a statute of New Jersey, making it an offence to burn *or* cause to be burned any barn, not parcel of a dwelling house, an indictment, containing one count, charging that the defendant "burned *and* caused to be burned," etc., was sustained by the Supreme Court of New Jersey in *State* v. *Price*, 6 Halsted, pp. 203, 215. Among other authorities the court cited Starkie, who says: "It is the usual practice to allege offences cumulatively, both at common law and under the description contained in penal statutes; as that the defendant published and caused to be published a certain libel; that he forged and caused to be forged," etc. Starkie's Cr. Pl. 271.

So, under a statute of Pennsylvania, making it an offence for supervisors of highways to neglect to open *or* repair a public highway, it was held proper to charge in one count the neglect to open *and* repair such highway, the court observing that the offences of not opening and not repairing were of the same character and description, if indeed they were distinct. *Edge* v. *Commonwealth*, 7 Penn. St. 275, 278.

We are of opinion that the objection to the second count upon the ground of duplicity was properly overruled. The evil that Congress intended to reach was the obtaining of money from the United States by means of fraudulent deeds, powers of attorney, orders, certificates, receipts or other writings. The statute was directed against certain defined modes for accomplishing a general object, and declared that the doing of either one of several specified things, each having reference to that object, should be punished by imprisonment at hard labor for a period of not less than five years nor more than ten years, or by imprisonment for not more than five years and a fine of not more than one thousand dollars. We perceive no sound reason why the doing of the prohibited thing, in each and all of the prohibited modes, may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to the charge contained in a single count; for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matters embraced by it.

3. But an objection is made to the proceedings in the court below which is of a serious character.

The record does not show that the accused was ever formally arraigned, or that he pleaded to the indictment, unless all that is to be inferred simply from the order, made at the beginning of the trial and as soon as the accused appeared, reciting that the jury were selected, empanelled and sworn " to try the issue joined," and from the statement in the bill of exceptions that the jury were "sworn and charged to try the

issues joined." What that issue was is not disclosed by the record.

The Government does not, in terms, claim that it was unnecessary for the defendant to plead to the indictment. But it assumes (although the record does not state such to be the fact) that the defendant pleaded not guilty, and contends that the omission to record that plea is only a clerical error which did not prejudice his substantial rights.

By section 1025 of the Revised Statutes of the United States it is declared that "no indictment found and presented by a grand jury in any District or Circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

Is it a matter of form only whether the accused pleads or does not plead to an indictment for an infamous crime? If it be not a matter of form, then it would seem that, if convicted, the fact that the accused did plead should clearly appear from the record, and not be left to mere inference arising from a general recital that the jury was sworn to try and did try "the issue joined," without stating what was such issue. While, as said in *Pointer* v. *United States,* 151 U. S. 396, 419, all parts of the record are to be interpreted together, so that, if possible, effect be given to all, and a deficiency in one part of it supplied by what appears elsewhere, it was there held that "the record of a criminal case must state what will affirmatively show the offence, the steps without which the sentence cannot be good, and the sentence itself."

In capital or other infamous crimes an arraignment has always been regarded as a matter of substance. "The arraignment of the prisoner," Lord Coke said, "is to take order that he appear, and for the certainty of the person to hold up his hand, and to plead a sufficient plea to the indictment or other record." Co. Litt. 263*a.*

According to Sir Matthew Hale, the arraignment consists of three parts, one of which, after the prisoner has been called to the bar, and informed of the charge against him, is, the

" demanding of him whether he be guilty or not guilty; and if he pleads not guilty, the clerk joins issue with him *cul. prist*, and enters the prisoner's plea; then he demands how he will be tried, the common answer is, *by God and the country*, and thereupon the clerk enters *po. se*, and prays to God to send him a good deliverance." 2 Hale's Pl. Cr. 219. So, in Blackstone: "To arraign is nothing else but to call the person to the bar of the court to answer the matter charged upon him in the indictment." "After which [after the indictment is read to the accused] it is to be demanded of him whether he is guilty of the crime whereof he stands indicted, or not guilty." 4 Bl. Com. 322, 323 to 341. Chitty says: "The proper mode of stating the arraignment on the record is in this form, 'and being brought to the bar here in his own proper person, he is committed to the marshal,' etc.. And being asked how he will acquit himself of the premises (in case of felony, and of 'the high treasons,' in case of treason) 'above laid to his charge, saith,' etc. If this statement be omitted, it seems the record will be erroneous." 1 Chitty's Cr. Law, *419.

The importance attached to the proper arraignment of one accused of felony, including the demand upon him to plead to the indictment, was illustrated in *Commonwealth* v. *Hardy*, 2 Mass. 303, 316. That was a case of murder. The accused was arraigned before one of the justices of the Supreme Judicial Court of Massachusetts. He pleaded not guilty, and put himself for trial upon the country. The plea was recorded, and counsel was assigned to him at his own request. On a subsequent day the prisoner was brought into court, three justices being present, and the clerk having been directed to arraign him, he informed the court, that the prisoner had been arraigned and had pleaded not guilty. The prisoner made no objection to proceeding, and he was convicted. The question arose whether the conviction was valid under a statute then in force which provided that "all indictments which may be found for any capital offence shall be heard, tried and determined exclusively in the courts which are to be holden pursuant to the second section hereof by

three or more of the said justices." Chief Justice Parsons said: "We are all of opinion that the power of hearing, trying and determining an indictment for a capital offence includes a power to arraign a prisoner, and to record his plea. It is therefore one of the powers which the court, when holden by one judge, is restrained from exercising. Consequently the arraignment of a prisoner, and his plea, were not *coram judice*." Again: "No possible inconvenience has resulted to the prisoner from the proceedings in this case. His plea, that was recorded, was the most favorable plea he could have pleaded; and when the jury was called, he made no objection to proceed in the trial of his issue, but assented by making his challenges. But an objection, founded in a want of jurisdiction, however small, and from which no inconvenience has arisen, is not, in capital cases, taken away, by an implied assent."

In *Grigg* v. *People*, 31 Michigan, 471, which was an indictment for larceny, the record did not show that the accused had been arraigned or that any plea was made or entered of record. Nevertheless, he was convicted and sentenced to the House of Correction. The court, speaking by Chief Justice Graves, (Justices Cooley and Campbell concurring,) said: "The attorney general, whilst admitting that an arraignment and plea were indispensable, as of course they were, submits to the court whether, in the absence of any express matter in the record as returned to show the contrary, it ought not to be intended that both proceedings were actually had. An arraignment and plea being steps imperatively required, the recital of them, if they were taken, was a necessary ingredient of the record." The judgment was reversed, that the accused might be lawfully arraigned or otherwise dealt with agreeably to law.

The Supreme Court of Wisconsin, in a case of misdemeanor, said: "The record in this case fails to show any issue which the jury was called upon to try. It is the business and the duty of the prosecuting officer of the government to move on the trial of criminal cases and to see that the proper issue be made up. It may be probable that the defendant in this case was perfectly aware of the offence with which he was charged.

It appears that he consented to go to trial. But a trial of what did he consent to? He was arrested and held in custody under the process of the court. It was his right to be informed, and it was the duty of the government to inform him of the accusation against him. This is done by arraignment and requiring the defendant to plead. It is true, this right of arraignment may, in minor offences, be waived, but a plea, an issue, is absolutely essential. Nor can we supply an issue corresponding to the verdict when the record is entirely silent on the subject." *Douglass* v. *State of Wisconsin*, 3 Wisconsin, 715, 716.

In *People* v. *Corbett*, 28 California, 328, 330, it appeared that the defendant, indicted for grand larceny, asked, when brought into court, a separate trial, which was granted; the jury was empanelled; witnesses were introduced by him; the case was argued by his counsel, and the jury, having been charged by the court, returned a verdict of guilty. The Supreme Court of California said: " If the defendant had at any time, anterior to the trial, plead not guilty, the defects in the arraignment, or rather the omission to arraign, might have been cured on the ground of waiver. But neither the motion of defendant for a separate trial, nor the introduction of witnesses by him, nor the fact that the case was argued on his behalf to the jury, nor did all of them combined, cure the want of a plea. There was not only no arraignment, but over and beyond that there was no issue for the jury to try. Not only did the defendant not plead, but inasmuch as the statute opportunity for pleading was never extended to him, he was never under any obligation to plead. A verdict in a criminal case where there has been neither arraignment nor plea, is a nullity, and no valid judgment can be rendered thereon. And so is a verdict rendered upon a plea put in by the attorney of a party indicted for a felonious assault with intent to rob."

In *State* v. *Hughes*, 1 Alabama, 655, 657, it was held to be error to swear the jury to pass upon the guilt or innocence of the accused before calling upon him to plead. The court said that until the prisoner was called on for his plea, it could not be known whether there would be an issue of fact for the jury,

or what the issue (if any) might be; that the prisoner, instead of submitting the question of his guilt, might have pleaded in abatement, or have presented to the court legal objections to the indictment; and that, though a formal arraignment of one charged with a, criminal offence may not be indispensable to the regularity of a conviction, it was clear that the case must be put in a condition for trial before the jury is sworn.

In *Sartorious* v. *State*, 24 Mississippi, 602, 611, 612, which was an indictment for buying certain goods, knowing them to be stolen, the court said: "The record does not show that the prisoner was arraigned or that he pleaded to the indictment. In trials for minor offences a formal arraignment in practice is generally dispensed with. In such cases, where the defendant has pleaded to the indictment, an arraignment will be presumed. But a party, before he can be put upon his trial, must plead to the indictment. In civil proceedings it is error to submit a cause to the jury without an issue in fact having been made up by parties. In prosecutions for offences it must be equally erroneous to put a party upon his trial, unless he has taken issue upon the charge by pleading to the indictment."

In *Bowen* v. *State*, 108 Indiana, 411, 413, the court said: "Under the decisions of this court it can no longer be recognized as a subject of controversy that where the record in a criminal case fails to disclose affirmatively that a plea to the indictment was entered, either by or for the defendant, such record on its face shows a mistrial, and that the proceeding was consequently erroneous, to say the least."

In *Aylesworth* v. *People*, 65 Illinois, 301, 302, which was an indictment for a misdemeanor, the record failed to show that the accused was ever arraigned or pleaded. The Supreme Court of Illinois said: "The record should also show that the plea of not guilty was entered. Without it there is nothing for the jury to try. *Johnson* v. *People*, 22 Illinois, 314." The judgment was reversed. In the subsequent case of *Hoskins* v. *People*, 84 Illinois, 87, which was an indictment for larceny, the court said: "It appears from the record that defendant 'waived arraignment, copy of indictment, list of jurors and witnesses,' etc., but no plea of any kind was entered.

So far as this record discloses, no plea was entered before the accused was placed on trial. On the authority of the former decisions of this court, this was error. *Johnson* v. *People*, 22 Illinois, 314; *Yundt* v. *People*, 65 Illinois, 372. It was held in those cases that, without an issue formed, there could be nothing to try, and the party convicted could not properly be sentenced." So, in *Parkinson* v. *People*, 135 Illinois, 401, 403, which was an indictment for a felony : "There must be a plea; and if a trial is had, and no plea of any kind is interposed and shown by the record, it is reversible error."

In *State* v. *Ulger- Chenier*, 32 La. Ann. 103, 104, which was an indictment for rape, the accused, after the trial commenced, was, by order of court, arraigned and his plea made. The trial then proceeded under the direction of the court. The Supreme Court of Louisiana said : "We cannot sanction such a departure from ancient landmarks in criminal procedure. The prisoner must be arraigned and must. plead to the indictment before the case can be set down for trial or tried. It may be that, in this particular case, no prejudice was wrought to the accused. Still we think it unsafe to sanction such irregularities in capital cases."

In *Ray* v. *People*, 6 Colorado, 231, which was an indictment for forgery, it was assigned for error that the accused never was arraigned, and that he never pleaded or was required to plead to the indictment. Upon these points the record was silent. The statutes of Colorado required all criminal trials to be conducted according to the course of the common law, except where a different mode is pointed out. The court held that without. an issue there was nothing to try, and if the record failed to show an arraignment and plea prior to trial the proceeding was a nullity.

In *State* v. *Vanhook*, 88 Missouri, 105, the Supreme Court of Missouri reversed a judgment of conviction, because the record did not show an arraignment and plea of not guilty, observing that the error was a fatal one, and that. it was for the legislature, and not the court, to change the law on the subject.

To the same general effect are *State* v. *Wilson*, 22 Pac. Rep. (Kansas) 622, 626 ; *Jefferson* v. *State*, 7 S. W. Rep. (Texas)

244; *Hicks* v. *State*, 12 N. E. Rep. (Indiana) 522 ; *State* v. *Agee*, 68 Missouri, 264; *State* v. *Saunders*, 53 Missouri, 234.

The American treatises upon criminal law are to the same effect. Bishop says : " It is laid down, in a general way, that the arraignment and plea are a necessary part of the proceeding, without which there can be no valid trial and judgment. With the consent of the court the prisoner may waive the reading of the indictment, though without waiver it will be read, even where he has been furnished with a copy. And as the object of the arraignment is to obtain the plea, if the prisoner voluntarily makes it without, and it is accepted by the court, nothing more is required. But without plea there can be no valid trial. Nor will the proceeding be rendered good by the fact that the defendant went to trial voluntarily and without objection, knowing there was no plea. It must be before the jury are sworn ; afterward the plea comes too late." 1 Bishop's Cr. Pro. § 733. " There can be no trial on the merits without a plea of not guilty." Ib. § 801. Wharton : " When brought to the bar in capital cases, and at strict practice in all cases whatever, the defendant is formally arraigned by the reading of the indictment and the calling on him for a plea. . . . The right of arraignment in a criminal trial may, in some cases, be waived, but a plea is always essential." 1 Amer. Cr. Law. § 530.

Without citing other authorities we think it may be stated to be the prevailing rule, in this country and in England, at least in cases of felony, that a plea to the indictment is necessary before the trial can be properly commenced, and that unless this fact appears affirmatively from the record the judgment cannot be sustained. Until the accused pleads to the indictment and thereby indicates the issue submitted by him for trial, there is nothing for the jury to try ; and the fact that the defendant did so plead should not be left to be inferred from a general recital in some order that the jury were sworn to " try the issue joined." The record should be a permanent memorial of what was the issue tried, and show whether the judgment, whereby it was proposed to take the life of the accused or to deprive him of his liberty, was in accordance with the law of

the land. In *Hopt* v. *Utah*, 110 U. S. 574, 579, this court, observing that the public has an interest in the life and liberty of an accused person, said : " Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods."

The views we have expressed would seem to be the necessary result of section 1032 of the Revised Statutes, which provides: " When any person indicted for any offence against the United States, whether capital or otherwise, upon his arraignment stands mute or refuses to plead or answer thereto, it shall be the duty of the court to enter the plea of not guilty on his behalf in the same manner as if he had pleaded not guilty thereto. And when the party pleads not guilty, or such plea is entered as aforesaid, the cause shall be deemed at issue, and shall, without further form or ceremony, be tried by a jury."

This statute is based on the act of April 30, 1790, c. 9, § 30, 1 Stat. 112, 119; the act of March 3, 1825, c. 65, § 14, 4 Stat. 115, 118; and the act of March 3, 1835, c. 40, § 4, 4 Stat. 775, 777. It proceeds upon the established principle that before a criminal trial can be legally commenced there must be an issue to try, and that a plea by or for the accused is essential to the formation of the issue. And the section above quoted requires the entry of the plea before the trial commences. Where the crime charged is infamous in its nature, are we at liberty to guess that a plea was made by or for the accused, and then guess again as to what was the nature of that plea?

Neither sound reason nor public policy justifies any departure from settled principles applicable in criminal prosecutions for infamous crimes. Even if there were a wide divergence among the authorities upon this subject, safety lies in adhering to established modes of procedure devised for the security of life and liberty. Nor ought the courts, in their abhorrence of crime nor because of their anxiety to enforce the law against criminals, to countenance the careless manner in which the records of cases involving the life or liberty of an accused are

often prepared. Before a court of last resort affirms a judgment of conviction of, at least, an infamous crime, it should appear, affirmatively, from the record that every step necessary to the validity of the sentence has been taken. That cannot be predicated of the record now before us. We may have a belief that the accused, in the present case, did, in fact, plead not guilty of the charges against him in the indictment. But this belief is not founded upon any clear, distinct, affirmative statement of record, but upon inference merely. That will not suffice. We are of opinion that the rule requiring the record of a trial for an infamous crime to show affirmatively that it was demanded of the accused to plead to the indictment, or that he did so plead, is not a matter of form only, but of substance in the administration of the criminal law; consequently, such a defect in the record of a criminal trial is not cured by section 1025 of the Revised Statutes, but involves the substantial rights of the accused.

It is true that the Constitution does not, in terms, declare that a person accused of crime cannot be tried until it be demanded of him that he plead, or unless he pleads, to the indictment. But it does forbid the deprivation of liberty without due process of law ; and due process of law requires that the accused plead, or be ordered to plead, or, in a proper case, that a plea of not guilty be filed for him, before his trial can rightfully proceed ; and the record of his conviction should show distinctly, and not by inference merely, that every step involved in due process of law, and essential to a valid trial, was taken in the trial court ; otherwise, the judgment will be erroneous. The suggestion that the trial court would not have stated, in its order, that the jury was sworn to try and tried " the issue joined," unless the defendant pleaded, or was ordered to plead, to the indictment, cannot be made the basis of judicial action without endangering the just and orderly administration of the criminal law. The present defendant may be guilty, and may deserve the full punishment imposed upon him by the sentence of the trial court. But it were better that he should escape altogether than that the court should sustain a judgment of conviction of an infamous crime

where the record does not clearly show that there was a valid trial.

> *The judgment is reversed and the case is remanded that the defendant may be properly arraigned and plead to the indictment, and for further proceedings in conformity with law.*

Mr. Justice Peckham, with whom concurred Mr. Justice Brewer and Mr. Justice White, dissenting.

I dissent from the judgment of the court in this case. It seems to me to proceed, not alone upon the merest technicality, but also upon an unwarranted presumption of error arising from the absence of a formal statement in the record showing that the defendant was duly arraigned and pleaded not guilty, although the inference that he was so arraigned and that he did thus plead seems to be plain from the facts which the record discloses. At a certain period of English history, when an accused person had no right to be represented by counsel, and when the punishments for crimes were so severe as to shock the sense of justice of many judges who administered the criminal law, it was natural that technical objections which, perhaps, alone stood between the criminal and the enforcement of a most severe, if not cruel, penalty, should be accorded great weight, and that forms and modes of procedure, having really no connection with the merits of a particular case, should be insisted upon as a sort of bulwark of defence against prosecutions which might otherwise be successful, and which at the same time ought not to succeed. These times have passed and the reasons for the strict and slavish adherence to mere form have passed with them.

In this case there cannot be a well founded doubt that the defendant was arraigned and pleaded not guilty. The presumption of that fact arises from a perusal of the record and it is, as it seems to me, conclusive. There is no presumption in favor of a defendant upon a criminal trial, excepting that of innocence. Error in the record is not presumed, but must be shown. A presumption that proper forms were omitted is not

to be made. There must be at least some evidence to show it. And yet, because the record fails to make a statement in terms that the defendant was thus arraigned and did so plead, this judgment is to be reversed, and that, too, without an allegation or even a pretence that the defendant has suffered any injury by reason of any alleged defect of the character in question. I think such a result most deplorable.

The record sets out the indictment. It then shows that the district attorney for the United States appeared in court and the defendant in his own person, and by his attorney, also appeared, and then, on motion by the district attorney, it is ordered by the court that a jury come to try the issue joined, and a jury is duly selected, empanelled and sworn to try the issue joined, and a true verdict to render according to the law and the evidence. The trial proceeds and the jury return a verdict that the defendant is guilty as charged in the first, second and third counts of the indictment. In the bill of exceptions, a document prepared by the defendant, it is also asserted that a jury was empanelled, sworn and charged to try the issues joined in the cause. Can there, from these facts, be a doubt founded upon any fair presumption that the defendant had been arraigned and had pleaded not guilty?

That the plea was of that nature must be presumed from the fact that the jury was summoned to try the issue, and that upon the trial of such issue the defendant was convicted on the first, second and third counts of the indictment. The evidence stated in the bill of exceptions is directed solely to the issue of guilt or innocence. It would be wholly immaterial upon any other issue, and it is also of such a nature as to show beyond all rational doubt that it was received upon the trial of the issue raised by a plea of not guilty. No other presumption than that an arraignment and a plea of not guilty had been interposed, could from such a record be reasonably indulged in. The record further shows a motion made in arrest of judgment and the grounds thereof, among which no mention is made of any alleged failure to arraign the defendant. The motion is sustained as to the first and third counts of the indictment, and overruled as to the second,

and the defendant excepts to the ruling. The record then continues, and states that on motion of the district attorney the defendant was brought to the bar of the court in custody of the marshal, and it being demanded of him· what he has to say why sentence should not be pronounced upon the verdict, says he has nothing further to say than as already said. There is no statement in the record that the defendant, when thus called upon to speak, said one word or raised any objection as to any failure to arraign him or take his plea. If there had been such failure, was not that a time to speak, and would the defendant not then have· spoken? Further, the defendant, after his sentence, obtains a writ of error from this court, and files an assignment of error, and yet no mention is therein made of any absence of an arraignment. Is it reasonable upon such a record to infer that no arraignment was had and no plea taken? Is it not, on the contrary, reasonable to infer that defendant was arraigned, and that he did plead not guilty? Yet, by this decision, it results that unless the record states in terms an arraignment and plea, a judgment must be reversed, although the presumption that there was an arraignment and plea arising from the contents of the record is both strong and uncontradicted.

In the face of such a presumption, the simple failure of a clerk to make an entry of the fact of arraignment and plea, although both presumably took place, is yet made a substantial ground for a reversal of a judgment which· actually was rendered in due course of a criminal prosecution and by a court of competent jurisdiction. This ought not to be. There is but a mere suggestion at the end of the brief of the counsel for the plaintiff in error, filed in this court, where the objection is for the first time raised that defendant was not given an opportunity to plead to the indictment before being put upon his trial, never having been arraigned. For the *facts* counsel refer to the record, and that shows what has already been set forth. I think a clear and necessary inference arises from the contents of the record that the defendant was arraigned and pleaded.

Suppose, however, the defendant through mere inadver-

tence had not been formally arraigned at the bar, and had not in terms pleaded, but that he was placed on trial without objection on his part, and both sides treated the case as if he had been arraigned and pleaded not guilty, could it be plausibly contended that, nevertheless, a fatal error had been committed by a neglect of this form, and that a judgment of conviction must on that account be reversed? Is it possible that for the first time a defendant can in this court successfully raise this formal objection, and under circumstances showing a waiver of the rule, and yet obtain a reversal of the judgment on that ground alone? To my mind the mere statement of these questions furnishes their conclusive answer. Some cases may hold the necessity of a formal plea and that the conduct of a defendant in going to trial without any objection, and as if a plea of not guilty had been entered, did not waive the necessity of such a plea. Those cases are not based on principles which, in my judgment, ought now to be followed.

Here the defendant could not have been injured by an inadvertence of that nature. He ought to be held to have waived that which under the circumstances would have been a wholly unimportant formality. A waiver ought to be conclusively implied where the parties had proceeded as if defendant had been duly arraigned, and a formal plea of not guilty had been interposed, and where there was no objection made on account of its absence until, as in this case, the record was brought to this court for review. It would be inconsistent with the due administration of justice to permit a defendant under such circumstances to lie by, say nothing as to such an objection, and then for the first time urge it in this court.

It is not necessary, however, in this case to place my judgment upon any doctrine of waiver, and I do not base my dissent upon that view of the case.

This record is, as I have said, far from showing that through mere inadvertence the defendant was not arraigned and did not plead. On the contrary, the necessary presumption arising from the facts appearing therein is that the

defendant was arraigned and did plead. To reverse the judgment upon the pure technicality (raised in this court for the first time) that the record does not *in terms* show an arraignment and a plea, where the presumption arising from the contents of the record is that both occurred, is to my mind a sacrifice of justice to the merest and most formal kind of an objection, founded upon an unjustifiable presumption of error and entirely at war with the facts as they occurred. If the statute cited in the opinion of the court, Rev. Stat. § 1025, do not apply to a case such as this, it is difficult to think of one for which its provisions could more properly be invoked.

The judgment should be

*Affirmed.*

I am authorized to state that MR. JUSTICE BREWER and MR. JUSTICE WHITE concur in this opinion.