192 So.2d 741

**Cranston CARR**

v.

**STATE.**

**6 Div. 160.**

Court of Appeals of Alabama.

Oct. 18, 1966.

Rehearing Denied Nov. 15, 1966.

Beddow, Embry & Beddow, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal from a misdemeanor conviction was submitted on oral argument April 21, 1966.

Carr was indicted for assault with intent to murder. On his trial, August 18, 1965, the record shows the following judgment entries:

"ORDERS OF COURT

"Date of Orders
8–18–65

"Defendant appears without counsel. Court finds that he is financially able to employ counsel, but has not done so, that he desired same counsel that represented him in February and March, 1965 on a charge of murder in this court, but said counsel declined to do so and defendant made no further efforts to secure other counsel, although physically and financially able to do so.

"Bob Moore, Jr., Judge

"This day came Hon. Wayne Weaver, Solicitor who prosecutes for the State of Alabama, and came also the defendant

Cranston Carr, alias Crant Carr, who being duly arraigned upon the indictment charging assault with intent to murder, says thereto that he is not guilty. Whereupon came a jury of good and lawful men, to-wit Max Ward, and 11 others, who being duly sworn and empanelled on their oaths, do say, 'We, the jury, find the defendant guilty of assault and battery as charged in the indictment, but decline to fix his punishment'. Upon consideration hereof it is ordered and adjudged by the Court that the said Cranston Carr is guilty of assault and battery as charged in the indictment, and his punishment fixed to serve hard labor for Winston County for six (6) months, and to pay the costs hereof, said costs not being presently paid nor judgment confessed therefor, said defendant is sentenced to additional hard labor for Winston County for _____ days to pay the costs of $_____, calculated at the rate of $3.00 per day.

"Bob Moore, Jr., Judge"

Carr appealed and moved for new trial, without prejudice to either step.

## I.

The tendencies of the State's evidence ran as follows:

The night of September 6, 1964, Mr. Carl Garrard, Carr's father-in-law, was at home when Carr came. Carr wanted to see his children. Garrard testified:

"A Well, he just come in and said he wanted to see the kids, and I said all right, and he wanted Carolyn to go home, and I said, 'She can't go home', and he shot me. She had just got out of the hospital. Crant was crazy. He didn't know what he was doing. He would have shot his daddy before he shot me.

"Q He did shoot you?

"A Yes.

"Q Where?

"A In the stomach.

"Q What with?

"A .25 automatic."

According to Garrard, Carr had been in a state of perturbation for two or three weeks.

Garrard was also called as a witness by Carr to establish that Carr had been institutionalized about five or six months in Bryce State Hospital in Tuscaloosa.

## II.

On hearing on the motion for new trial, Carr had counsel. The District Attorney was called to contradict the minute entry above quoted to the effect that Carr was not "duly arraigned upon the indictment charging assault with intent to murder."

The District Attorney testified that the only arraignment of which he knew was on the date of trial; that the jury had already been struck and was in the box. He was the only witness heard on the motion. His testimony was (in part):

"Q (By Mr. Beddow): Prior to the 18th day of August, 1965, were you ever present on the arraignment of Mr. Carr?

"A The only arraignment I know anything about was on the date of the trial.

"Q At what stage of the trial was he arraigned?

"A. As far as I know the jury had already been struck, and, the best I remember, was already in the box."

The transcript of evidence on the trial of the indictment begins as follows:

"Trial and proceedings had on the above styled cause before his Honor, Bob Moore, Jr., sitting with jury at Double Springs, Alabama, on August 18, 1965.

"Jury was duly qualified, selected and sworn.

"Mr. Weaver reads indictment to jury.

"THE COURT: (To defendant) That charges assault with the intent to murder. How do you plead?

"DEFENDANT: I plead not guilty and not guilty by reason of insanity."

## III.

It is argued that State v. Hughes, 1 Ala. 655, and Code 1940, T. 15, §§ 278–288, require a reversal because the court below denied the motion for new trial.

The State counters this authority with that of Fernandez and White v. State, 7 Ala. 511. This case we consider to be more apt authority than the *Hughes* case.

Our Code, T. 15, § 276, provides in pertinent part:

"If a defendant, when arraigned * * * neglects to plead, * * * the court must cause the plea of not guilty to be entered for him."

When the *Hughes* case was decided, this statute did not contain the expression "neglects to plead," the statute then applying only to one who stood mute or obdurate.

▮▮▮ Arraignment in the formal sense seems to occur only *after* indictment and before a trial jury is picked. The difference between cases punishable capitally and those of lesser penalties is marked.

The Common Law ritual after presentment for a felony ran (iv. Bl.Com. 322, et seq.):

1. The clerk orders the jailer to set the person named in the indictment to the bar;

2. The clerk then proceeds to arraign the prisoner:

   a) "A. B. hold up your hand";

   b) Then, on the prisoner so doing, the clerk continues, "You stand indicted, by the name of A. B. * * * for that you (the indictment is read through); and

   c) Then, "Are you guilty of this felony whereof you stand indicted, or not guilty?"

3. The prisoner then pleads.[1]

See 2 American Journal of Legal History 321, et seq.

Following this arraignment on the indictment, a petty jury was assembled by drawing twelve names by "ballot."

The prisoner (not being accorded counsel) is then admonished by the clerk that these are the men that shall pass between the King and him, upon his life and death (if noncapital, "Upon your trial."). Should he wish to challenge any he had to do so "as they come to the book [step forward to kiss the Bible] to be sworn."

The Court Crier then called for the witnesses. The clerk then calls each juror singly to be sworn saying each time:

"Juror look upon the prisoner, prisoner look upon the juror."
Then the twelve (absent challenges) are asked if they all are sworn.

Then the second time the clerk calls the prisoner by name and has him raise his hand. The clerk tells the jury to look upon the prisoner, that he stands indicted and reads them the whole indictment as on arraignment.

On all felons being tried, the court takes up "traverses on indictments for trespasses and other misdemeanors." The prisoner is not required to hold up his hand. The clerk tells him of the indictment, reading it, and asks if he is guilty thereof or not guilty.

If the prisoner pleads not guilty, he is bailed to appear at the next session. iv. Bl. Com. 351.

---

1. Before abolition of trial by battle, it was needful for the clerk to ask, "Culprit, how will you be tried?" The answer usually was, "By God and the Country." Otherwise weights were put on his chest until he did ask for a jury.

When the misdemeanor traverse comes on for trial, the jury being empanelled and sworn, the clerk, without calling on the prisoner, reads the indictment to the jury, states the defendant's plea, then says, "Your business Gentlemen, is to inquire, whether he is guilty, or not guilty; and hearken to your evidence."

The need for an arraignment was to determine which prisoners wanted to be put to a jury and which of them would confess in open court.

█ Hence, unless some other reason appears such as our statute which affords special venire in capital cases, the time and mode of arraignment are not strict. An opportunity must be given to traverse by pleading and proof. Ex parte Haynes, 39 Ala.App. 349, 98 So.2d 670; Boyd v. State, 41 Ala.App. 507, 138 So.2d 60.

## II.

Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097, held that the Fourteenth Amendment guarantees arraignment and plea on a charge of felony as essential to due process of law. Before the trial proceeds, if the court enters a plea of not guilty for the accused, the *Crain* opinion (p. 644, 16 S.Ct. 952) states that due process has been followed.

In 1914 Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772, overruled *Crain*. There, after new trial was awarded in the state court, a new information was filed against Garland. He was not formally arraigned nor called on for a plea to this second information.

The Supreme Court held he had notice of it, a jury trial and a full opportunity to be heard. The opinion notes that *Garland,* in effect, filed three motions against the second information. See Anno. 58 L.Ed. 772.

In State v. Riley, 63 Wash.2d 243, 386 P. 2d 628, the court points out that the only possibility of prejudice to Riley was the deprivation of an opportunity to plead

guilty. Since such a plea could have been entered at any time before verdict, the court found no error in the absence of a formal arraignment.

The court noted that the trial had "proceeded on the theory that he had entered a plea of not guilty."

█ Though in Alabama criminal practice consent of the court is requisite to withdraw a plea of not guilty (Whittle v. State, 205 Ala. 639, 89 So. 43), yet we do not doubt that where no plea had been entered the trial court would have to accept guilty.

Hamilton v. State, 147 Ala. 110, 41 So. 940, was decided before the adoption of Supreme Court Rule 45 (error without injury), 175 Ala. xxi.

## III.

█ Summarizing, we conclude there is no reversible error because:

a) There was a full trial on the theory of the defendant's having formally pled not guilty and not guilty by reason of insanity with evidence and a charge to the jury on not only the elements of the charged and implicitly embraced offenses, but also as to legal insanity;

b) The jury's verdict acquitted Carr of felony and found him guilty only of a misdemeanor;

c) Evidence to contradict the minute entry did not come from record evidence, rather only from a recollection of the District Attorney which did not cover the entire time and is partly contradicted by the court reporter's transcript;

d) The minute entry has not been impeached. It, in effect, shows a plea of not guilty; and

e) The second reading of the indictment to the defendant after the jury was sworn and empanelled is surplusage.

Alternatively, we could also affirm either because the conviction was only for a mis-

demeanor or because the defendant was tried on the theory of having properly pleaded. See State v. Riley, supra.

The judgment below is

Affirmed.