## THE STATE v. HOPPER, *Appellant.*

### Division Two, February 1, 1898.

1. **Criminal Law**: NO ARRAIGNMENT. A judgment of conviction in a criminal case will be reversed where it appears that the defendant was not arraigned before he was put upon his trial.

2. ———: EVIDENCE OF THREATS. Where the theory of the defense in a criminal trial is that deceased was the aggressor, evidence of threats made by the deceased is admissible as explanatory of his purpose in assaulting defendant.

3. ———: ———: VAGUENESS. The vagueness of threats is a matter for the jury and it is for them to determine whether or not they were made against the defendant.

4. ———: INSTRUCTIONS: FLIGHT. An instruction for flight should be refused where the evidence shows that the defendant only left the scene of the difficulty and went home, a distance of half a mile.

5. ———: ———: VOLUNTARILY ENTERING DIFFICULTY: MALICE. One upon whom an assault is about to be made, voluntarily entering into a difficulty without felonious intent, and not for the purpose of wreaking malice or inflicting great bodily harm, is not guilty of murder if he slay his assailant. But if he provoke the difficulty or begin the quarrel with the purpose of taking advantage of the deceased and of taking his life or doing him some great bodily harm, he can not avail himself of the plea of self-defense. And an instruction is condemned which failed to so declare the law.

*Appeal from McDonald Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED.

*Hugh Dabbs* and *James A. Sturges* for appellant.

(1) There was no arraignment of defendant before he was put on trial. This is error under repeated rul-

ings of the court. *State v. Williams*, 117 Mo. 379; *State v. Walker*, 119 Mo. 467. (2) The evidence shows that the deceased began the difficulty and at the time had a knife concealed under his coat. Under these circumstances threats made by him a few moments prior thereto, against the "Hopper boys" (defendant and his brothers), were of the greatest importance in characterizing the conduct of deceased and explaining his conduct and purpose in assaulting defendant. *State v. Harrod*, 102 Mo. 610; *State v. Harlan*, 130 Mo. 381; *State v. Fitzgerald*, 130 Mo. 407; *State v. Crawford*, 99 Mo. 74; Kelly's Criminal Law, sec. 250. (3) Nor were these threats inadmissible on account of vagueness and uncertainty of what the deceased meant by the expression "Hopper boys," "and they;" this being a matter for the jury to decide. *State v. Crawford*, 99 Mo. 74; *State v. Harlan*, 130 Mo. 381; *State v. Fitzgerald*, 130 Mo. 407. (4) There was no evidence on which to base instruction number 21, as it is clearly shown that the deceased began the difficulty; but even if there was such evidence it does not contain a correct statement of the law, as it does not require that defendant should engage in the difficulty or fight with felonious intent. *State v. Partlow*, 90 Mo. 550; *State v. Gilmore*, 95 Mo. 554; *State v. Cable*, 117 Mo. 384; *State v. Lewis*, 118 Mo. 84; *State v. Evans*, 128 Mo. 406. (5) There was no evidence of flight and the instruction on that subject was certainly error.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

Upon an examination of the record it will be found that defendant was not arraigned in the court below. We are in receipt of information from the prosecuting attorney of McDonald county that neither

the original record in the case nor the minutes kept by the court, show an arraignment. For this reason this cause should be reversed and remanded for a new trial.

BURGESS, J.—From a conviction of manslaughter in the fourth degree at the August term, 1897, of the McDonald circuit court, and the fixing of his punishment at two years' imprisonment in the penitentiary, under an indictment theretofore preferred against him by the grand jury of said county, for having on the —— day of August, 1896, at said county, shot and killed one Jack Tillotson with a pistol, defendant appeals.

The difficulty occurred at a school house called the Loomis school house one night, during a protracted meeting which was being conducted there. It appears that the evening next preceding the night upon which the difficulty occurred the defendant and two or three companions passed along the road near by the house where deceased then lived, and that some of the party hallooed at him, and also used some profane language toward him. The killing occurred out doors after dark near the school house, but in the light reflected from the lamps in the house, so that by reason of the light those who witnessed the conflict were enabled to see what took place between the parties. It appeared from the evidence on the part of the State that the beginning of the difficulty was that deceased started toward defendant, and remarked that he would whip the damned s—— of a b—— for the way he cursed him and abused him the night before. That Hopper said a word or two in reply, and turned and hit him with his fist in the face. That deceased then hit defendant in the face one lick with his fist. That Hopper then commenced kicking Tillotson, when the latter hit him one or two more licks, then grabbed up a little stick

and hit him on the thigh, when Hopper jumped up and fired the fatal shot at him.

Defendant testified that deceased approached him, and while doing so remarked, "I suppose you are the damned s—— of a b—— that was in the crowd holloing at me last night," and that he said, "Yes, I was in the crowd but I didn't do any holloing. Deceased then replied, "I can whip the damned s—— of a b—— that holloed," and that he, defendant, shoved him back, when deceased struck him in the breast with a knife, inflicting a wound on his breast bone three or four inches long, and a quarter of an inch in depth; also a wound in each hand, and one upon his thigh. That deceased then knocked him down with a stick of wood, and that he fell on some wood; that he then threw his arm on his gun, and that deceased struck him in the back with another stick, when he, defendant, shot him; that he then went home and was confined to his bed for about eight weeks. Dr. St. John, a witness for defendant, testified that he was called to attend defendant professionally, and upon examination he found the wounds upon the person of defendant testified to by him, but that they were superficial and not dangerous. Upon an examination of the body of deceased after his death no knife was found upon or about his person.

Defendant's first contention is that there was no arraignment of defendant before he was put upon his trial. This is conceded by the State to be true, as well, also, as that the judgment must be reversed for that reason. The rule announced by this court is that a judgment of conviction in a criminal case will be reversed, when it appears that the defendant was not arraigned before he was put upon his trial. *State v. Williams*, 117 Mo. 379; *State v. Walker*, 119 Mo. 467.

It is insisted by defendant that error was committed in excluding evidence offered by him of threats made by deceased against the "Hopper boys" a few minutes before the difficulty. Under defendant's theory of the case deceased was the aggressor, and threats by him, if any were made, were admissible under such circumstances as explanatory of his conduct and purpose in assaulting defendant. Their vagueness was a matter for the jury, and it was for them to determine whether or not they were made against the defendant. *State v. Adams*, 76 Mo. 355; *State v. Crawford*, 99 Mo. 74; *State v. Harrod*, 102 Mo. 610; *State v. Harlan*, 130 Mo. 381; *State v. Fitzgerald*, 130 Mo. 407.

Instruction numbered 13 given upon the part of the State to the effect that flight raises the presumption of guilt, should have been refused. There was no evidence upon which to predicate it. The mere fact that defendant fled from the place where the homicide was committed immediately thereafter and went home not more than half a mile distant, did not authorize such an instruction. "It is not every going away from the place of the homicide that raises the presumption of the guilt of the accused." *State v. Fairlamb*, 121 Mo. 137.

The twenty-first instruction given in behalf of the State is challenged because of the want of evidence upon which to base it, the contention being that it appears from the evidence that deceased began the difficulty; but even if it were otherwise correct, the instruction does not contain a correct presentation of the law, as it does not require that defendant should engage in the difficulty with felonious intent. It reads as follows: "If the jury believe from the evidence that deceased and defendant had a fight which resulted in the death of the deceased and that defendant commenced the fight or brought it on by any willful and unlawful act of his committed at the time, or that he voluntarily

and of his own free will and inclination entered into the fight, then there is no self-defense in the case and they should not acquit on that ground, and in such case it makes no difference how imminent the peril might have been in which defendant was placed during the fight." To voluntarily enter into a difficulty by one upon whom an assault is about to be made or has been made without any felonious intent, and not for the purpose of wreaking malice or inflicting great bodily harm, does not make the person so doing guilty of murder if he in so doing kills his antagonist. "When, however, the defendant in a criminal case provokes the difficulty or begins the quarrel with the purpose of taking advantage of the deceased and of taking his life or doing him some great bodily harm, then there is no self-defense in the case, however imminent the peril of the defendant may become in consequence of an attack made on him by the deceased, and when the defendant kills the deceased under such circumstances he is guilty of murder in the first degree." *State v. Partlow,* 90 Mo. 608; *State v. Gilmore,* 95 Mo. 554; *State v. Cable,* 117 Mo. 384; *State v. Lewis,* 118 Mo. 84; *State v. Evans,* 128 Mo. 406; *State v. Rapp, ante,* p. 443. Upon another trial the instruction now under consideration should be modified so as to read, "or if he entered into the difficulty for the purpose of wreaking his malice, or for the purpose of taking advantage of deceased, and of taking his life or doing him some great bodily harm," then there was no self-defense in the case. There was ample evidence upon which to bottom the instruction with the amendment suggested.

The result is that the judgment must be reversed and the cause remanded for further trial in accordance with this opinion.

GANTT, P. J., and SHERWOOD, J., concur.