THE STATE v. W. M. ROBINETT, Appellant.

Division Two, February 26, 1926.

1. **ARRAIGNMENT: Waiver.** Going to trial without objection and contesting the case made by the State as fully and effectively as if he had been formally arraigned is tantamount to a plea of not guilty by defendant, and a waiver of formal arraignment. Besides, the statute (Sec. 3958, R. S. 1919) has been amended to forbid a reversal of a conviction under such circumstances (Laws 1925, p. 196).

2. **INSTRUCTION: Insulting Words: Justification.** It is not error to give an instruction that "words or epithets, however abusive, do not justify an assault, and if you find and believe from the evidence that the defendant shot the deceased because of any words or epithets addressed by deceased to the defendant, you cannot acquit the defendant on that account." Insulting words do not amount to justification.

3. ———: **Threats: General: No Direction as to Cummunicated Threats.** An instruction telling the jury to "take into consideration the evidence as to threats, if any, made by deceased prior to the killing; if you believe any such threats were made by deceased and were not communicated to defendant, then such threats may be considered by you as explaining the conduct and demeanor of deceased at the

time of the shooting," includes communicated as well as uncommunicated threats, and correctly declared the law as to uncommunicated threats, but placed no limitation upon the manner in which the jury were to consider communicated threats, but was not erroneous for that reason; and a full instruction on self-defense having been given, if defendant desired a more definite instruction concerning the effect to be given to the communicated threats, he should have requested it.

4. **ARGUMENT TO JURY. Failure of Defendant's Wife to Testify.** In the trial of Robinett for murder, the prosecuting attorney, in his argument to the jury, said: "And here is Robinett's wife. Why didn't she testify?" The court promptly sustained an objection to the remarks, and directed the jury not to take them into consideration in arriving at their verdict. The court was not asked to further rebuke the attorney. *Held*, no error.

Assault and Battery, 5 C. J., Section, 253, p. 756, n. 66. Criminal Law, 16 C. J., Section 720, p. 392, n. 17, 21; Section 2271, p. 919, n. 78; Section 2493, p. 1049, n. 82. Expressio Unius etc., 25 C. J., p. 220, n. 17. Homicide, 30 C. J., Section 188, p. 37, n. 15, 17; Section 633, p. 388, n. 45, 47.

Appeal from Butler Circuit Court.—*Hon. Almon Ing*, Judge.

AFFIRMED.

*John A. Gloriod* and *Lawrence E. Tedrick* for appellant.

(1) The court should not single out detached and isolated portions of testimony and instruct thereon. State v. Rozell, 225 S. W. 931. Instruction 5 is clearly erroneous, because it tells the jury that certain things constitute no defense. Appellant claims that the shooting was done in self-defense and he is entitled to have the jury consider all facts, which might have a bearing, however slight, upon such questions, and while appellant had no right to kill deceased because of abusive epithets used, yet the evidence that such were used may have had an important bearing when the jury came to consider the question of self-defense. State v. Yates, 256 S. W. 809; State v. Adkins, 284 Mo. 687. The court shall not on the

trial of the issue in any criminal case, sum up or comment upon the evidence. Sec. 4038, R. S. 1919. (2) Instruction 6 ignores the threats that were communicated to appellant. The testimony of appellant shows that on several occasions deceased threatened to kill him and that said threats were made by deceased to appellant himself. State v. Cole, 263 S. W. 207. (3) The evidence shows that appellant's wife had been confined in the asylum on account of insanity and she was not used as a witness on account of her mental condition; hence the comment of prosecuting attorney was highly prejudicial to appellant and constitutes reversible error. Sec. 4037, R. S. 1919; State v. Shouse, 188 Mo. 473.

*Robert W. Otto*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1) Appellant's complaint of the giving of Instruction 5, relating to vile epithets and abusive words, is without merit. State v. Gieseke, 209 Mo. 342; State v. Ballance, 207 Mo. 618. Said instruction is not a comment on the evidence, but a correct statement of the law. (2) Instruction 6 is not erroneous in view of the evidence. There is no evidence of threats made to third persons which were communicated to defendant, hence the ruling on this point in the Cole case does not apply. State v. Cole. 263 S. W. 210.

WALKER, P. J.—The defendant was charged in the Circuit Court of Butler County with murder in the first degree, found guilty of murder in the second degree and sentenced to the penitentiary for a term of fifty years, from which judgment he appeals.

The defendant shot and killed John Carter at the village of Oglesville, Butler County, on the morning of November 26, 1923. Carter went to the defendant's house and stopped at the front gate. A young man named Noah Miles accompanied Carter on an errand of his own. Robinett was on his front porch. Carter called to him saying;

"Bill, come here I want to talk to you." Robinett stepped into his house, got his shotgun and came out, saying, "Get out of the way, Noah, I am going to shoot him." Defendant fired two shots, both of which struck Carter in the breast, inflicting fatal wounds from which he died in a few minutes. Miles ran into the house, saw the defendant reloading his gun and asked him not to shoot again, as he had already killed Carter. A search of Carter's body disclosed that he was unarmed. The defendant was arrested and signed a voluntary statement concerning the homicide which was read in evidence, but it is not set out in the bill of exceptions.

The statement by defendant's counsel is as follows:

"On a trial of the case defendant invoked a plea of self-defense and offered testimony tending to prove threats made against him by the deceased, which testimony showed that sometime previous to the killing deceased and defendant had some trouble over deceased wanting defendant to work at a still and further trouble over insults offered to defendant's wife by deceased. Defendant testified 'that he had ordered deceased to stay away from his home and to stop making advances to his wife, who was partially insane, but deceased refused to do this and would go to defendant's home in his absence and persist in his advances' and when remonstrated with, deceased cursed defendant and on several occasions threatened to kill him.

"On the morning of the 26th day of November, 1923, deceased went to the home of defendant and, according to defendant's testimony, started in through the yard gate, calling to defendant to come out, cursing him and threatening to kill him. Defendant testified that 'from his actions, he believed deceased was drunk' and this is corroborated by the witness Luke, who testified that he 'smelled whiskey on decedent after he was shot.' Defendant testified that 'as deceased was advancing toward him, he reached for his hip pocket as if to draw a weapon and that he (defendant) picked up a shot gun and shot

deceased, thinking that his life was in immediate danger.''

I. The Attorney-General calls attention to the fact that the record fails to show an arraignment and plea.

**Arraignment.** Section 3958, Revised Statutes 1919, contemplates that the defendant shall be arraigned and required to enter a plea. In State v. Braunschweig, 36 Mo. 397, 399, Judge WAGNER said:

''Much of the common-law solemnity that was formerly used in the formal arraignment of those who stood indicted for crime is now dispensed with. There were reasons for an adherence to them which do not exist now. It was at one time necessary to ask him how he should be tried; but as the right to trial by battle never obtained with us, and the law has provided that every such issue shall be submitted to a jury of the country, as the exclusive triers of the fact, that question would be entirely meaningless. Our law does not demand that he shall formally and explicitly plead not guilty; if he requires a trial, or does not confess the indictment to be true, it is the duty of the court to enter a plea of not guilty, and proceed in the same manner as if he had formally pleaded. [2 R. C. 1856, sec. 5, p. 1181.] The defendant was present with his counsel when the jury was impaneled, waived the reading of the indictment, a plea of not guilty was entered of record, and we do not see how he can be injuriously affected because the arraignment was not made in a solemn, formal manner.''

In State v. O'Kelley, 258 Mo. 345, 350, 167 S. W. 980, ROY, C., in a very interesting manner referred to some of the humane changes that have been introduced into our criminal procedure. Section 22 or our Bill of Rights reads:

''In criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses against him face to face; to have process to compel the attendance of witnesses in his behalf; and to a speedy, public trial by an impartial jury of the county.''

The enactment of these humane provisions wrought a revolution in criminal procedure. Monstrous as it may now seem, all these and other substantive rights were denied to the accused at common law. These rights, however, were fully accorded to the defendant in the case at bar. The information distinctly specified the offense with which he was charged; he appeared in person and by counsel; he had process to compel the attendance of his witnesses; he had a speedy, public trial before an impartial jury of his county; he was permitted to testify in his own behalf, and he met the witnesses for the State face to face. There was a time when it was held in the absence of the plea of not guilty there was no issue joined; nothing to try; and in such case a conviction would be set aside. That theory, devoid of all semblance of merit, has been abandoned, at least in this State. The defendant went to trial without objection and contested the case made by the State as fully and effectively as if he had been formally arraigned. This was tantamount to a plea of not guilty and a waiver of a formal arraignment. [State v. Allen, 267 Mo. 49, 183 S. W. 329; State v. Roberts, 294 Mo. 284, 302, 242 S. W. 669.] The point, however, was not referred to in appellants' motion for a new trial, nor in the brief of his learned counsel, but we have treated it as if the matter were here for consideration. It may be added that Section 3958, supra, has been amended so as to forbid a reversal of a conviction in the circumstances of this case. [Laws 1925, p. 196.]

The appellant complains: (1) The court erred in giving Instruction 5; (2) and in giving Instruction 6; and (3) in permitting the prosecuting attorney in his argument to comment on the fact that defendant's wife had failed to take the stand to testify in the case.

II. Instruction 5 reads as follows:

"You are instructed that words or epithets however abusive do not justify an assault, and if you find and believe from the evidence in this cause, that the defendant shot the deceased Carter because of

**Justification.**

any words or epithets addressed by said Carter to the defendant, you can not acquit the defendant on that account.''

In State v. Ballance, 207 Mo. 607, 618, 106 S. W. 60, this court said:

''Instruction number thirteen is challenged. In these words the court instructed the jury 'that no words or epithets, however opprobrious or insulting, can justify the killing of the party who uses them.' It is insisted that the word 'alone' should have been added after the word 'insulting.' '' This instruction correctly declared the law of this State. Insulting or opprobrious epithets may arouse the passion to such an extent that if the person to whom they are applied, acting under the heat of passion engendered thereby, kills his adversary, such provocation will reduce the killing to murder in the second degree, but they do not amount to a justification of the party who uses them. [State v. Gartrell, 171 Mo. l. c. 516, 517; State v. Gordon, 191 Mo. l. c. 125.]'' See also State v. Gieseke, 209 Mo. 331, 108 S. W. 525.]

There is no merit in the complaint as to Instruction 5.

III. Instruction 6 reads:

''You are instructed that you will take into consideration the evidence as to threats, if any, made by deceased prior to the killing. If you believe that any such

**Threats.** threats were made by deceased and were not communicated to the defendant, then such threat or threats may be considered by you as explaining the conduct and demeanor of deceased at the time of the shooting.''

The instruction complained of is general in its terms as to the consideration to be given by the jury to threats. It includes communicated as well as uncommunicated threats. Instructions are required to be read and considered together, and hence the rule of *expressio unius,* often invoked in the construction of statutes, has no application here. The subsequent portion therefore of the

312 Mo. Sup.—41.

instruction as to uncommunicated threats correctly declared the law, but placed no limitation upon the manner in which the jury was to consider communicated threats. This was not error. A full and complete instruction on self-defense had been given, from which the jury could determine their duty concerning any threats shown to have been made by the deceased and determine their effect from all of the other facts and circumstances in the case. Ample protection of the defendant's rights being thus afforded, as we held in State v. Fletcher, 190 S. W. l. c. 323, if the defendant desired a more definite instruction on threats he should have requested that it be given. Not having done so he should not be heard to complain.

The Supreme Court of Georgia in Swain v. State, 112 S. E. 141, held that a correct instruction on uncommunicated threats by the deceased against the accused is not erroneous, because of a failure in that instruction or elsewhere to charge on communicated threats.

In Kimbrell v. State, 138 Ga. l. c. 414, a murder case, in which the court had fully charged upon murder, manslaughter and justifiable homicide, including reasonable fears, it was held not to be error to fail to instruct upon threats, of which there was evidence, in the absence of a request therefor. The rule in regard to the giving of an instruction for self-defense as rendering unnecessary an instruction on threats,. unless the latter is requested, is based on the reason that in the giving of the former the rights of the defendant as to threats, whether communicated or not, and other defensive matters, are protected in a general way, and if he deems a more specific instruction necessary in regard to threats he must ask for it.

IV. In his argument to the jury, the prosecuting attorney said: "And here's Robinett's wife. Why didn't she testify?" The court promptly sustained an objection to this remark and directed the jury to disregard it and not to take it into consideration in arriving at their verdict. The court did all that appellant's counsel asked.

The court was not asked to further rebuke counsel.   There is no merit in this complaint.

The information formally charged the defendant with murder in the first degree.   The instructions fairly submitted the case to the jury and the verdict was warranted by the evidence.   The judgment is therefore affirmed. *White, J.,* concurs; *Blair, J.,* concurs in the result.